UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONALD BALD,

              Plaintiff,

  -v-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

              Defendant.
_____

17-CV-01023-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 10).

Plaintiff Ronald Bald brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying his Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act ("the Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 14) for remand is granted and the Commissioner's motion (Dkt. No. 17) is denied.

## **BACKGROUND**

On May 29, 2014, Plaintiff filed applications for DIB and SSI alleging disability since December 18, 2012, due to herniated and torn discs in his back. (Tr. 186, 212).[1] His Disability Report also states that Plaintiff is unable to bend over, has limited lifting ability, and "constant pain." (Tr. 212). Born in 1984, Plaintiff was twenty-eight years old at the

---

[1] References to "Tr." are to the administrative record in this case.

time of his application. (Tr. 68). Plaintiff testified at his hearing that he previously worked as an assembly line worker for powder coating for airplane panels and hospital equipment, a roofing company, at a company handling quality control, and at a cleaning company. (Tr. 44-47). Plaintiff's DIB and SSI applications were initially denied on July 31, 2014 (Tr. 112), after which he requested a hearing before an Administrative Law Judge (Tr. 126-27). On July 21, 2016, Plaintiff, represented by counsel, appeared before an Administrative Law Judge ("ALJ") for a hearing. (Tr. 720). On December 21, 2016, the ALJ issued his decision denying Plaintiff's DIB and SSI claims. (Tr. 17-35). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 7, 2017 (Tr. 1-6), Plaintiff commenced this action.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement; and second, whether the severe impairment is either listed in Appendix 1 to subpart P of part 404 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.*

- 4 -

§416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §416.920(f). If, based on that comparison, the claimant can perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his or her burden through the first four steps, "the burden then shifts

to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

  III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating Plaintiff's DIB and SSI claims. Under step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the relevant period. (Tr. 22). At step two, the ALJ concluded Plaintiff had severe impairments of lower back disc herniations and bilateral carpal tunnel syndrome. *Id.* At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.* Before proceeding to step four, the ALJ assessed Plaintiff's RFC during the relevant period as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally climb ramps or stairs and balance; he can never kneel, crouch, or crawl; he can never climb ladders, ropes, or scaffolds; he cannot work at unprotected heights or around dangerous moving mechanical machinery; he cannot work or lift below waist level; he must be able to alternate between sitting and standing at his discretion; and he can perform frequent handling and fingering.

(Tr. 24-25). Proceeding to step four, the ALJ found that Plaintiff's RFC precluded him from performing any of his past relevant work. (Tr. 28-29). Thus, at the fifth step, the ALJ considered Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as a Telephone Solicitor, an Order Clerk, and a Final Assembler. (Tr. 29). Accordingly, the ALJ found Plaintiff can successfully adjust to

other work and, therefore, he has not been under a disability within the meaning of the Act since his May 29, 2014 DIB and SSI applications date. (Tr. 30).

IV. *Plaintiff's Challenge*

Plaintiff contends the ALJ erred by misapplying the treating physician rule and in applying the law when he improperly decided Plaintiff's RFC. (Dkt. No. 14 at 19). Specifically, Plaintiff contends the ALJ erred in assigning "little weight" to Dr. Sherban, a treating physician (because his opinion "addressed an issue reserved [for] the Commissioner" and because the opinion was "vague"), but assigned "great weight" to Dr. Schwab, a state consultative examiner. *Id.* Plaintiff argues that because Dr. Sherban issued a "vague" opinion, the ALJ had a duty to re-contact the physician to better develop the medical record. *Id.* Plaintiff further contends that Dr. Schwab's opinion is "stale". *Id.* The Court only reaches the issues relating to the treating physician rule for treating physicians Drs. Salcedo and Sherban.

Plaintiff has two treating physicians in this case: Dr. Salcedo, M.D., a pain management specialist, and Dr. Sherban, M.D., an orthopedic spinal surgeon.[2] Plaintiff was seen by Dr. Salcedo 54 times between January 2013 and March 2016. *See* (Tr. 394-674). Plaintiff was seen by Dr. Sherban three times between December 2015 and January 2016. *See* (Tr. 341-52). Interestingly, neither party raised any explicit issues regarding Dr. Salcedo, though both parties discuss Dr. Salcedo's findings extensively within their respective briefs. *See* (Dkts. 14, 17).

First, the ALJ did not assign a weight to treating physician Dr. Salcedo—even though the record reflects over 50 visits during a three-year span. *See* (Tr. 394-674). The

---

[2] Plaintiff refers to Dr. Sherban as a neurosurgeon. (Dkt. No. 14 at 19, 22).

ALJ cites to Dr. Salcedo's reports in his decision where he acknowledges the significant treating relationship. *See*, *e.g.*, (Tr. 26) ("The claimant has largely sought care from Dr. Daniel Salcedo."). This apparent oversight of the ALJ alone warrants remand. The ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our . . . decision for the weight we give [the claimant's] treating source's opinion."). Here, the ALJ does not make any weight determination for Dr. Salcedo, let alone give any indication he considered this treating source when making his disability determination. Considering that an ALJ must generally give more weight to a physician who is a treating source, has seen a patient frequently, and is a specialist (*see* 20 C.F.R. § 416.927(c)), the Court concludes that the ALJ erred in failing to explicitly assign weight to Dr. Salcedo.

Second, Dr. Sherban opined that "[Plaintiff] is 100% disabled" on all three exam occasions. (Tr. 334-51). The ALJ found that this opinion of Plaintiff being "100% disabled" was asserted without further explanation from Dr. Sherban, and therefore "vague". *Id*. Additionally, the ALJ found that this opinion was "inconsistent with the record as a whole" and is undermined by the fact that Dr. Sherban made this finding before running any further tests. (Tr. 28). The ALJ therefore assigned "little" weight to Dr. Sherban. *Id*. However, the ALJ also acknowledges the "relative lack of objective clinical findings" during Dr. Sherban's examinations. (Tr. 27).

Generally, "[i]f a physician's finding in a report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician." *Calzada v. Asture*,

753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010). This Court acknowledges the ALJ may accept portions of a treating physician's report while declining to accept other portions of the same report. *See Pavia v. Colvin*, 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d. Cir. 2002)). In addition, "[t]he mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician. Rather, because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent." *Allen v. Comm'r of Social Sec.*, 2018 WL 6844369, *9 n.2 (W.D.N.Y. Dec. 28, 2018) (citing *Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012)).

Here, the Court finds that the ALJ should have re-contacted Dr. Sherban for clarification of the "[Plaintiff] is 100% disabled" portion of his three reports. In addition, the ALJ did not appropriately consider the opinions of Dr. Salcedo, another of plaintiff's treating physicians. This matter is therefore remanded to address Drs. Salcedo and Sherban's opinions appropriately under the treating physician rule. The Court does not reach the remaining issues on review.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for remand (Dkt. No. 14) is granted and the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is denied. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:     March 4, 2019
              Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge